UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

X----------------------------------------------------X

PHASE ONE NETWORK, INC.,

                      Plaintiff,

            v.

YE f/k/a KANYE WEST d/b/a "Yeezy Tech",
ALEX KLEIN, KANO COMPUTING
LIMITED, STEMPLAYER, LTD, GETTING
OUT OUR DREAMS II, LLC, G.O.O.D.
MUSIC, DEF JAM RECORDINGS, and UMG
RECORDINGS, INC.,

                    Defendants.

X----------------------------------------------------X

Case No.: 22-cv-9511-JPC-KHP

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS YE F/K/A KANYE WEST D/B/A "YEEZY TECH",
GETTING OUT OUR DREAMS II, LLC'S AND G.O.O.D. MUSIC'S MOTION TO
DISMISS**

**ADELMAN MATZ P.C.**
**1159 Second Avenue, Ste 153**
**New York, New York 10065**
**Phone: (646) 650-2207**
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................II

STATEMENT OF FACTS ................................................................................................... 2

    A.        THE PARTIES........................................................................................... 2

    B.        THE INFRINGING ACTS ....................................................................... 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ....................................................................................................................... 7

    I.        MOVANTS' 12(B)(1) ARGUMENT SHOULD BE REJECTED ...................... 7

    II.        MOVANTS' 12(B)(6) CLAIM FAILS ................................................... 12

    A.        MOVANTS' DIRECT INFRINGEMENT WAS SUFFICIENTLY
    PLED        .................................................................................................... 12

    B.        ALL CLAIMS AGAINST GOOD II AND GOOD MUSIC WERE
    SUFFICIENTLY PLED............................................................................... 16

    C.        THE CONTRIBUTORY AND VICARIOUS INFRINGEMENT
    CLAIMS AGAINST MOVANTS WERE SUFFICIENTLY PLED ......................... 17

    D.        WILLFUL INFRINGEMENT CLAIM WAS SUFFICIENTLY
    PLED        .................................................................................................... 20

    III.        MOVANTS' FAIR USE ARGUMENTS SHOULD BE REJECTED ................. 21

    IV.        MOVANTS FAIL TO ESTABLISH THEIR 12(B)(7) ARGUMENT................ 24

CONCLUSION.................................................................................................................... 25

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aaberg v Francesca's Collections, Inc,*
    2018 WL 1583037 (S.D.N.Y. 2018)................................................................. 17, 18

*Alger v County of Albany, New York,*
    489 F Supp 2d 155 (N.D.N.Y. 2006) .................................................................. 17

*Andy Warhol Found. for the Visual Arts, Inc. v Goldsmith,*
    143 S Ct 1258 (2023)......................................................................................... 24

*Arista Records LLC v. Lime Grp. LLC,*
    784 F.Supp.2d 398 (S.D.N.Y. 2011)................................................................... 17

*Arista Records LLC v. Usenet.com, Inc.,*
    633 F.Supp.2d 124 (S.D.N.Y.2009) ................................................................... 20

*Ashcroft v Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 6, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)................................................................................ 6

*Bell Atl. Corp. v Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 6

*Blank Productions, Inc. v Warner/Chappell Music, Inc.,*
    2013 WL 32806 (S.D.N.Y. 2013)................................................................. 18, 20

*BWP Media USA, Inc. v. Gossip Cop Media, LLC,*
    87 F. Supp. 3d 499 (S.D.N.Y. 2015)........................................................ 22, 23, 24

*Campbell v Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)...................................................................................... 23, 24

*Carter v HealthPort Tech., LLC,*
    822 F.3d 47 (2d Cir. 2016)............................................................................ 5, 6, 12

*Chapman v. Maraj,*
    2020 WL 6260021 (C.D. Cal. 2020)............................................................... 22, 24

*Cole v. John Wiley & Sons, Inc.,*
    2012 WL 3133520 (S.D.N.Y. 2012)................................................................... 19

*Costello Pub. Co. v Rotelle*,
  670 F2d 1035 (D.C. Cir. 1981) ........................................................................... 24

*Crosney v. Edward Small Productions*,
  52 F.Supp. 559 (S.D.N.Y.1942) .......................................................................... 11

*Davis v Blige*,
  505 F3d 90 (2d Cir 2007) ..................................................................................... 11

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d. Cir. 2010) .............................................................................. 7, 8

*DigitAlb, Sh.a v. Setplex, LLC*,
  284 F.Supp.3d 547 (S.D.N.Y. 2018) .................................................................... 12

*DRK Photo v McGraw-Hill Glob. Educ. Holdings, LLC*,
  870 F3d 978 (9th Cir. 2017) .................................................................................. 9

*Ellis v. Jean*,
  2011 WL 6368555 (S.D.N.Y. 2011) ..................................................................... 13

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
  848 F.2d 24 (2d Cir. 1988) .................................................................................... 7

*For Envtl. Renewal, Inc. v Pyramid Crossgates Co.*,
  436 F3d 82 (2d Cir. 2006) ................................................................................. 6, 12

*Friedl v. City of New York*,
  210 F3d 79 (2d Cir. 2000) .................................................................................... 22

*Gayle v. Allee*,
  2021 WL 120063,(S.D.N.Y.2021) ....................................................................... 16

*Gershwin Pub. Corp. v Columbia Artists Mgt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971) ............................................................................... 20

*Golden v Michael Grecco Productions, Inc.*,
  524 F.Supp.3d 52 (E.D.N.Y. 2021) ..................................................................... 11

*Graham Hanson Design LLC v. 511 9th LLC*,
  2011 WL 744801 (S.D.N.Y. 2011) ........................................................................ 8

*Gym Door Repairs, Inc. v Young Equip. Sales, Inc.*,
  206 F.Supp.3d 869 (S.D.N.Y. 2016) ............................................................... 7, 8, 9

*Hamil Am., Inc. v. GFI,*
    193 F.3d 92 (2d Cir.1999) ................................................................................ 21

*Hill & Range Songs, Inc. v. Fred Rose Music, Inc.,*
    58 F.R.D. 185 (S.D.N.Y. 1972) ........................................................................ 25

*Hounddog Productions, L.L.C. v Empire Film Group, Inc.,*
    826 F.Supp.2d 619 (S.D.N.Y. 2011) ................................................................ 21

*Jasper v Bovina Music, Inc.,*
    314 F.3d 42 (2d Cir. 2002) .............................................................................. 10

*Kelly v L.L. Cool J,*
    23 F.3d 398 (2d Cir. 1994) ........................................................................... 7, 12

*Laine v Pride,*
    2010 WL 199927 (S.D.N.Y. 2010) .................................................................. 14

*Leonard F. v Israel Discount Bank of New York,*
    199 F.3d 99 (2d Cir. 1999) ................................................................................ 6

*Lewis v Trott,*
    2020 WL 4747503 (S.D.N.Y. 2020) ............................................................... 5, 9

*M. Shanken Commc'ns, Inc. v. Cigar500.com,*
    2008 WL 2696168 (S.D.N.Y. 2008) ................................................................ 22

*Matthew Bender & Co., Inc. v. W. Publ'g Co.,*
    158 F.3d 693 (2d Cir. 1998) ............................................................................ 17

*May v Sony Music Entertainment,*
    399 F Supp 3d 169 (S.D.N.Y. 2019) .................................................... 15, 16, 22

*McDonald v West,*
    138 F.Supp.3d 448 (S.D.N.Y. 2015) ............................................................... 16

*Morrison v Natl. Australia Bank Ltd.,*
    547 F.3d 167 (2d Cir. 2008) .............................................................................. 5

*New Old Music Grp., Inc. v. Gottwald,*
    122 F.Supp.3d 78 (S.D.N.Y. 2015) ................................................................. 16

*NRDC v. Johnson,*
    461 F.3d 164 (2d Cir. 2006) ........................................................................... 5, 9

*Parker-Leon v. Middle Vill. Preparatory Charter Sch.*,
    2019 WL 2394211 (E.D.N.Y. 2019) ................................................................ 9

*Paul Rudolph Found. v Paul Rudolph Heritage Found.*,
    2022 WL 4109723 (S.D.N.Y. 2022) .......................................................... 16, 19

*Plunket v. Doyle*,
    2001 WL 175252 (S.D.N.Y. 2001) ................................................................ 7

*Plymouth Resources, LLC. v Norse Energy Corp. USA*,
    2011 WL 13234819 (N.D.N.Y. 2011) ........................................................ 25

*Robbins Music Corp. v. Alamo Music, Inc.*,
    119 F.Supp. 29 (S.D.N.Y. 1954) .............................................................. 25

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ...................................................................... 6

*Scott v WorldStarHipHop, Inc.*,
    2012 WL 1592229 (S.D.N.Y. 2012) ........................................................ 8, 13

*Scroggins v Scroggins*,
    2012 WL 3229282 (E.D.N.Y. 2012) .......................................................... 24

*Staehr v Hartford Fin. Services Group, Inc.*,
    547 F3d 406 (2d Cir. 2008) ...................................................................... 8

*Su Lee v Flower Karaoke*,
    2019 WL 1597309 (E.D.N.Y. 2019) .......................................................... 7

*TCA Tel. Corp. v McCollum*,
    839 F3d 168 (2d Cir 2016) .................................................................. 23, 24

*Unicolors, Inc. v Macy's, Inc.*,
    2015 WL 1020101 (CD.Cal 2015) .......................................................... 24

*United States v Daugerdas*,
    2020 WL 364601 (S.D.N.Y. 2020) .......................................................... 19

*Van Cleef & Arpels Logistics, S.A. v Jewelry*,
    547 F.Supp.2d 356 (S.D.N.Y. 2008) ........................................................ 13

*Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt.*,
    2000 WL 1006257 (S.D.N.Y. 2000) .......................................................... 9

*Viacom Intern., Inc. v Kearney*,
    212 F.3d 721 (2d Cir. 2000)............................................................................25

*VMG Salsoul, LLC  v. Ciccone*,
    2013 WL 8600435 (C.D.Cal.2013)...............................................................16

*VMG Salsoul, LLC v Ciccone*,
    824 F3d 871 (9th Cir. 2016) .........................................................................16

*WM Intl., Inc. v 99 Ranch Mkt. #601*,
    329 F.R.D. 491 (E.D.N.Y. 2019)...................................................................25

*Yeda Research & Dev. Co. Ltd*,
    2019 WL 4562409 .........................................................................................13

## **Statutes**

17 U.S.C. § 501(b) ...............................................................................................9

17 U.S.C. § 106 ..................................................................................................14

17 U.S.C. § 107(1) ..............................................................................................23

17 U.S.C. § 107(2) ..............................................................................................24

17 U.S.C. § 107(4) ..............................................................................................24

17 U.S.C. § 204 ..................................................................................................10

17 U.S.C. § 411 ..................................................................................................12

## **Rules**

Fed. R. Civ. P. 19(a)(1)(A-B) ............................................................................25

Fed. R. Civ. P. 19(b) ..........................................................................................25

Plaintiff Phase One Network, Inc. ("Plaintiff" or "Phase One") submits this memorandum in opposition to Defendants', YE f/k/a KANYE WEST d/b/a "Yeezy Tech" ("West"), GETTING OUT OUR DREAMS II, LLC ("GOOD II") and G.O.O.D. Music ("Good Music") (collectively "Movants"), motion to dismiss Plaintiff's Complaint ("Complaint" or "Compl."). This is a straightforward action for copyright infringement. Plaintiff sufficiently alleged ownership of copyright registrations for the track South Bronx ("South Bronx" or the "Work"), and that it was reproduced, distributed and exploited by the Movants, without authorization.

Movants' 12(b)(1) claim fails as the Complaint pled Plaintiff's standing to sue as the copyright owner of copyright registrations for the Work. Even if the Court were to entertain Movants' bizarre argument that one of the composers of South Bronx, Lawrence Parker ("KRS-One"), allegedly placed the Work into the public domain, licensed it or assigned it based on an interview appearing in a 2006 documentary, Plaintiff submits a recording agreement establishing that KRS-One owned no rights in the Work's sound recording when the video was made. Also, a license is an affirmative defense and not a basis to dismiss under 12(b)(1).

Movant's 12(b)(6) argument also fails. Plaintiff pled the elements of each of its claims, and alleged in sufficient detail that Movants reproduced in the infringing track "Life of the Party" samples of key horn hits, drum fills and a melodic figure taken from the Work (the "Infringing Track"), and that Movants then reproduced, distributed and performed, and directed and/or authorized others to reproduce, distribute and perform, the Infringing Track on the "Stemplayer" and in advertisements to promote the Stemplayer and West's album. Plaintiff shows here exactly where these samples are located and that they permeate the Infringing Track. Plaintiff also alleged how the Stemplayer is a copyright infringement machine that allows users to make unlimited derivative copies of the Infringing Track, and the sampled protected elements of the Work.

Movants' specious arguments that they have no notice of the protected elements that were

used and the infringements should not be countenanced. Movants know exactly what elements were copied and how they were utilized because they initially reached out to Plaintiff admitting that the Work had been sampled and requesting a license. Despite not having a license, the Infringing Track was used in advertisements and on millions of Stemplayers themselves. Movant's claim in their motion alleging facts outside the pleading that they did not release the Infringing Track and instead released a different version of "Life of the Party" that did not contain the samples, is not appropriate for a motion to dismiss, as this is not the place for the Court to resolve factual disputes, nor is it true as both parties have Stemplayers that contain the Infringing Track. To the extent there was, as Movants' allege, a non-infringing version of "Life of the Party" later or elsewhere is irrelevant as that is again outside the pleading and not the version that Plaintiff's alleged to be the Infringing Track. Movants' other arguments based on Plaintiff not identifying all infringers and contributory infringers fails as Plaintiff need not identify all co-infringers. Dismissal is also not proper here as Plaintiff requires discovery to identify these third-parties. Movants, however, know who they are as they authorized the third-parties to broadcast or distribute the Infringing Work and are likely aware of who purchased the Stemplayers.

Finally, the 12(b)(7) motion should be denied as it is well-settled that a plaintiff does not have to sue all copyright infringers in a copyright infringement action. In the event the Court grants any part of Movants' motion, Plaintiff requests that it be granted leave to replead.

## STATEMENT OF FACTS

### A.    THE PARTIES

Plaintiff is a record company that owns, controls and/or administers copyright and/or has exclusive rights in and to numerous sound recordings and compositions, including for the song "South Bronx" by Boogie Down Productions. *See* Declaration of Poupa Jenny Marashi ("Marashi Decl."), Exhibit A ("Compl.") ¶6; Declaration of Melissa Mende ("Mende Decl.") ¶3. South Bronx

is known as an important diss track, as it was a response to the Queensbridge-based MC-Shan track, "The Bridge," and the beginning of what came to be known as hip hop's "The Bridge Wars". Compl. ¶¶35-36.

Both the sound recording and composition copyrights for South Bronx are registered with the U.S. Copyright Office and attained U.S. Copyright Registration No. SR 115-448 with an effective date of May 14, 1990, and U.S. Copyright Registration No. PA 764-496, with an effective date of January 1, 1996, respectively (the "Registrations"). *Id.* ¶38; Marashi Decl. Exs. B, C. Through a series of written and legal transfers, Plaintiff acquired 50% of the right, title, and interest in the Work, and 100% of the administration rights over the masters and compositions in the Work and the Registrations. Compl. ¶39; Mende Decl. ¶¶3, 12. Plaintiff obtained these rights in an agreement with the copyright owner, who had obtained said rights as part of an exclusive recording contract in 1986 ("Recording Agreement") with the authors of South Bronx, KRS-One and Scott Sterling, a/k/a Scott LaRock ("LaRock")(together professionally known as Boogie Down Productions). Mende Decl. ¶¶3, 5, Ex. 11.

Defendants West, Kano Computing Limited ("Kano"), Alex Klein ("Klein"), and Stemplayer, LTD (collectively, the "Stem Parties") created, developed, and sold a music playback device, the Stemplayer ("Stemplayer"), which has a limited number of musical works on it. *Id.* ¶26. The Stemplayer allows users to download the individual 'stems'[1] of each song on the Stemplayer, and users are then able, and are encouraged, to freely customize and manipulate the stems they download from the Stemplayer. *Id.* ¶51, Ex. 7.

B.    THE INFRINGING ACTS

In 2021, Movants knowingly without a license, copied and used portions of South Bronx,

---

[1] A "stem" is a part of a song that can be isolated and exported as its own audio file. Stems last for the duration of the entire track, and when all four stems play at once, a single song is created. For every track on the Stemplayer, there were four (4) individual stems: vocals, drums, bass, and music.

including samples of the sound recording, when creating the derivative track "Life of the Party" ("Infringing Track") without Plaintiff's permission. Compl. ¶¶25, 42-43. Specifically, the drum fills, horn hits, and melodic figure in the Infringing Track are samples, i.e. exact reproductions from South Bronx master sound recording. *Id.* ¶43. A summary of the timestamps where samples of South Bronx can be heard in the Infringing Track is as follows ("Table 1"):

| Sound Recording:[2] | Horn Hits | Melodic Figure | Drum Fills | Vocal |
|---|---|---|---|---|
| South Bronx (Ex. J) | ~0:02 | ~2:49 | ~0:22; 2:53 | ~0:24* |
| Stemplayer LOTP (Ex. 9) | ~0:19* | ~3:30; 4:43; 5:19 | ~1:39; 3:28; 4:40 | ~3:32; 5:20 |
| Stemplayer Stems[3] (Exs. 2, 3) | ~0:19* | ~3:30; 4:43; 5:19 | ~1:39; 3:28; 4:40 | ~3:32; 5:20 |

On July 15, 2021, GOOD II sent Plaintiff a formal licensing request through their clearance agent, Eric D. Weissman ("Weissman"), for the use of South Bronx in the Infringing Track. Compl. ¶45; Mende Decl. Ex. 11. The licensing request confirmed that samples of South Bronx had been incorporated into the Infringing Track and that the license was being requested "in connection with the distribution of records embodying the 'LOTP' master throughout the World, in all media, now known or hereafter devised, in perpetuity, which includes the right to utilize the Original Master in connection with all advertising, publicity, and promotion of such records." Mende Decl. Ex. 11.

Shortly thereafter, on August 25, 2021, the Stem Parties and West launched the Stemplayer, loaded with West's album *Donda* and the Infringing Track, and stemplayer.com, taking pre-orders for the device, with the intent to distribute the Infringing Track via sales of the Stemplayer. Compl. ¶¶30-32, 47. The Infringing Track was also utilized in various infringing advertisements promoting the Stemplayer and West's *Donda* album on social media. *Id.* ¶¶32, 48-49.

Movants then willfully distributed the Infringing Track to the Stem Parties on August 29, 2021, September 8, 2021, October 11, 2021, and November 2, 2021 and authorized the Stem

---

[2] The exhibits in Table 1 show how and where elements of South Bronx were sampled without authorization.

[3] In discovery, Plaintiff received additional versions of Stemplayer stems that Movants claim to have sent to the Stem Parties to be reproduced onto the Stemplayer. Declaration of Sarah M. Matz ("Matz Decl.") ¶4, Exs. 4–4-H. Plaintiff is still exploring how these other versions used South Bronx. *Id.* Exs. 4-5.

Parties to reproduce the Infringing Track onto Stemplayers that were being sold around the world. Compl. ¶31; Matz Decl. ¶¶1, 7, Exs. 1, 4, 8-9; Marashi Decl. Ex I. Sometime in October of 2021, the Stem Parties and West distributed the Infringing Track by reproducing it onto the Stemplayer and selling it to consumers. Compl. ¶50. According to West, when the Stemplayer was launched he sold 11,000 units of the Stemplayer within 24 hours, which generated revenue of $2.2 million dollars. *Id.* ¶29.

On November 10, 2021, with the parties still not having come to an agreement regarding a license to use South Bronx in the Infringing Track, Movants, through their clearance agent Mr. Weissman, requested that Plaintiff forward a license agreement for South Bronx, including their preferred terms. *Id.* ¶52; Mende Decl. Ex. 12. That day, Plaintiff's Operations Officer, Vanessa Sanchez, responded to Mr. Weissman, stating that she was out of the office and would respond the following Monday. Compl. ¶53. Six days later on November 16, 2021, Movants, through Mr. Weissman, formally retracted the license request, despite having already incorporated samples of the sound recording of South Bronx into the Infringing Track and despite the fact that Kano and Klein had reproduced, distributed, and sold the Infringing Track on the Stemplayer with Movants' authorization and continued to do so. *Id.* ¶55; Mende Decl. Ex. 13.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. *Carter v HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). In deciding a 12(b)(1) motion, the Court "must" accept all facts alleged in the pleading as true and draw all inferences in favor of the plaintiff. *Lewis v Trott*, 2020 WL 4747503, at *2 (S.D.N.Y. 2020)(*quoting NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). "'[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Lewis*, 2020 WL 4747503, at *2 (*quoting Morrison v Natl. Australia Bank*

*Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008), *aff'd,* 561 US 247 (2010)).

When a challenge is fact-based, a defendant is permitted to "proffer[] evidence beyond the [p]leading" and the "plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems' in the assertion of jurisdiction." *Carter,* 822 F.3d at 56 (citation omitted). A plaintiff is "entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing. *Id.* If a 12(b)(1) motion "put[s] the Plaintiffs' Article III standing in issue, the District Court has leeway as to the procedure it wishes to follow." *All. For Envtl. Renewal, Inc. v Pyramid Crossgates Co.*, 436 F3d 82, 87-88 (2d Cir. 2006)(citations omitted). Upon conducting limited discovery on the jurisdictional issue, the Court may deem "the matter might be appropriate for resolution on motion supported by affidavits." *Id.* at 88 (citation omitted). A court may also conduct a hearing limited to Article III standing if a genuine issue of material fact exists. *See id.* (citation omitted). However, "where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence." *Id.* (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences in Plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal,* 556 U.S. 662, 663 (2009). A 12(b)(6) motion "is not an occasion for the court to make findings of fact." *Roth v Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)(*citing Leonard F. v Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir. 1999)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010)(citation omitted). The Court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco,* 622 F.3d at 111 (citation omitted). A court shall exclude all other additional material or convert the motion to a motion for summary judgment, provided sufficient notice is given to the parties. *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

On a 12(b)(7) motion to dismiss, courts the moving party bears the initial burden on a 12(b)(7) motion and "'[f]ederal courts are extremely reluctant to grant'" them. *Su Lee v Flower Karaoke*, 2019 WL 1597309, at *4 (E.D.N.Y. 2019)(citation omitted).

## ARGUMENT

### I.   MOVANTS' 12(B)(1) ARGUMENT SHOULD BE REJECTED

As an initial matter, Movants' argument that Plaintiff lacks standing because West had some sort of license from KRS-One is not proper on a 12(b)(1) motion. "Courts tend to grant motions to dismiss for lack of standing when the 'plaintiff does not allege that she is either an owner or an exclusive licensee of the 'copyrighted work'". *Gym Door Repairs, Inc. v Young Equip. Sales, Inc.,* 206 F.Supp.3d 869, 894 (S.D.N.Y. 2016)(*citing Plunket v. Doyle*, 2001 WL 175252, at *5 (S.D.N.Y. 2001); *see also Kelly v L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v L.L. Cool J,* 23 F.3d 398 (2d Cir. 1994)(granting motion for a more definite statement under Rule 12(e) "because of plaintiff's failure to allege present ownership and proper statutory registration of one of the copyrights at issue"). This makes sense as dismissal of a copyright claim may divest the court of jurisdiction. *Graham Hanson Design LLC v. 511 9th LLC*, 2011 WL

744801, *1 (S.D.N.Y. 2011)(defendant moved for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) regarding plaintiffs' contract, quasi contract and conversion claims, in the event defendants 12(b)(6) motion to dismiss the copyright infringement claim was dismissed).

Movants' license argument, however, is not a challenge to standing. Having pled ownership of a copyright, this argument is an affirmative defense that could only be considered on a Rule 12(b)(6) motion, if it could be considered on a Rule 12 motion at all. *See e.g. Scott v WorldStarHipHop, Inc.*, 2012 WL 1592229, *2 (S.D.N.Y. 2012)(rejecting the license affirmative defense as it was not apparent from the face of the pleading that that it could be considered on the motion and even if it could it was not enforceable). Movants, however improperly raise this as a 12(b)(1) argument knowing that on 12(b)(6) motion they could not have asked the Court to consider the documentary video because it was not referenced in and is not integral to the Complaint[4], there is no basis for the court to take judicial notice of it and as set forth below it was not actually a license because KRS-One did not have ownership at the time. *Scott*, 2012 WL 1592229, *2. Accordingly, this argument should be entirely disregarded.

Even under the cases cited by Movants, settled authority shows that Plaintiff's allegation that it owns valid a copyright registration in the Work that was assigned to it (SOF §A) is sufficient to plausibly plead Plaintiffs' standing and subject matter jurisdiction. *Gym Door Repairs, Inc.,* 206 F.Supp.3d at 893-94 (allegations that "Plaintiffs are and at all relevant times have been the owner of the exclusive rights under the United States Copyright Act" and copyright registrations relating thereto was sufficient "to establish a prima showing of jurisdiction").[5] Indeed, it is well-settled that

---

[4] The video could not be considered on a motion to dismiss as it was neither referenced to or integral to the Complaint and is not the type of document that a Court may take judicial notice of. *DiFolco*, 622 F.3d at 111(courts may consider on a motion to dismiss documents that were referenced in a complaint "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."). Even if the court could somehow take judicial notice of the video, it may not do so with regard to the truth of the video's contents. *See Staehr v Hartford Fin. Services Group, Inc.*, 547 F3d 406, 425 (2d Cir. 2008).

[5] Movant's argument in footnote 5 is of no moment. The SR registration was obtained in 1990 within 5 years of its creation and within 5 years of first publication. Mende Decl. Ex. ¶4; Ex. 10; Compl. ¶38. No discovery is required.

issues of fact, such as the validity of an assignment, "'cannot be resolved on [a] motion' to dismiss". *Id.* (*citing Vapac Music Pub., Inc. v. Tuff 'N' Rumble Mgmt.*, 2000 WL 1006257, at *4 (S.D.N.Y. 2000). "'Complaints [for copyright infringement] simply alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, have been held to be sufficient under the rules.'" *Gym Door Repairs, Inc.*, 206 F.Supp.3d at 894. (citations omitted). As such, the motion should be denied and limited discovery would be wasteful.

Movants' reliance on *DRK Photo v McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F3d 978, 990-91 (9th Cir. 2017) is also unavailing as the plaintiff in that case was a non-exclusive licensee and failed to allege facts sufficient to make it a beneficial owner of the registration under the statutory definition of persons with standing in 17 U.S.C. §501(b). It was on the face of the pleading that the *DRK* plaintiff lacked standing to sue, which is clearly not the case here.[6]

Even assuming arguendo that the Court could consider Movants' 12(b)(1) argument and submissions, none of the alleged evidence and cases place standing to sue at issue, which also means that no limited discovery is required.[7] None of this supports Movants' argument that KRS-One allegedly granted or licensed to all "MC's" rights to use his work simply by stating in a 2006 documentary that "I give to all MC's my entire catalog." *See* Marashi Decl. Ex. K.[8] [9] Not only did

---

[6] Movants' other cases at Mem. pp. 6-8 do not support their standing argument as there is no evidence proffered here that rebuts Plaintiffs' standing. For example, in *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, 2019 WL 2394211, at *2 (E.D.N.Y. 2019), the court denied defendants' 12(b)(1) motion as it found that the court had subject matter jurisdiction as the complaint pled facts that fell within the Individuals with Disabilities Act. Similarly here, the Complaint clearly pleads copyright infringement, and, as such, this Court indisputably has subject matter jurisdiction. Also, Courts in this District have more recently held that "[i]n deciding a 12(b)(1) motion, 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Lewis*, 2020 WL 4747503, at *2 (*quoting Natural Resources Defense Council*, 461 F.3d at 171. None of Movants' cases are applicable to the facts here.

[7] These documents and links, except for the printouts from the U.S. Copyright Office website, would be not considered on a 12(b)(6) motion and they are not properly authenticated and insufficient foundation for same was given.

[8] The Court should not consider Movants' exhibits in support of their motion to the extent that they were not referenced in the Complaint or where Movants fail to argue why Plaintiff allegedly relied upon it when drafting the Complaint. It is clear that Movants attempt to rely on various documents under the guise that this is a Rule 12(b)(1) motion when in fact their motion is really a 12(b)(6) motion to dismiss.

[9] There is also no evidence to support the claim that it is well known that KRS-One gave his copyrights to MC's,

Plaintiff sufficiently allege ownership, which in itself should be dispositive, but when KRS-One allegedly stated that his music was in the public domain, it was after KRS-One had already transferred his copyright interest in South Bronx almost two decades earlier. SOF§A; Mende Decl. ¶¶4-10; Ex. 10. Movants provide no evidence that KRS-One owned any copyrights in the Work at all when the statement was allegedly made, and to the contrary he did not. KRS-One had no ownership in "South Bronx" as provided in a recording agreement. *See id.* Movants cannot place standing at issue as it was impossible for KRS-One to license, assign or place the Work into the public domain when he no longer owned it.

This argument also fails as KRS-One's statements could not legally have resulted in any type of permanent gratis fee license or transfer of the entirety of all copyright registrations in the Work to 'MC's. An assignment or transfer of the entirety of the copyright was impossible as, in addition to not owning the Work, an assignment is required to be in writing to be enforceable. *See* 17 U.S.C. § 204; *Jasper v Bovina Music, Inc.*, 314 F.3d 42, 47 (2d Cir. 2002). No writing exists here. Additionally, there was no written or other authority from LaRock, the other person movants allege owned it. According to the copyright registration at Exhibit B, LaRock was identified as a co-owner of the registration. *See* Marashi Decl. Ex. B.[10] [11]

---

whatever that means. Movants' sole support is a documentary, and it is not even clear what KRS-One's actual intent was. However, even if the license argument could be considered, KRS-One's statement at most provided a license to "MCs", i.e. a master of ceremonies ("a person who introduces guests or entertainers at a formal occasion" https://www.oxfordlearnersdictionaries.com/us/definition/american_english/master-of-ceremonies) and West is not an 'MC'. KRS-One also does also not appear to unequivocally assign or place any copyright protected work that he owned into the public domain. He merely states that he would not sue an MC who used his work, which as noted above he had no authority to do.

[10] Plaintiff does not concede that LaRock or KRS-One owned the registration in the Work. However, even under Movant's version of events, the claim is precluded based on LaRock's alleged co-ownership. "An [co-]owner [of a copyright] may not [] convey the interests of his fellow co-owners without their express written consent, even if the transferee has no notice of the non-consenting owners' interest." *Davis v Blige*, 505 F3d 90, 99 (2d Cir 2007); *Crosney v. Edward Small Productions*, 52 F.Supp. 559, 561 (S.D.N.Y.1942)("One [co-owner of a copyright] cannot bind the interest of another, although he purports to do so, in the absence of assent or ratification upon her part."); s*ee also* https://www.copyright.gov/docs/regstat52500.html regarding joint authorship."

[11] As Plaintiff became a 50% owner of the "South Bronx" sound recording and obtained 100% administration rights from the copyright owner, i.e. B-Boy Records, Plaintiff has standing to bring this action. As such, Plaintiff does not address Ex. C to the Marashi Decl. In any event, Ex. C does not identify KRS-One as a copyright owner.

Such an alleged license would also be invalid where it would effectively nullify the value of the copyright as anyone could use it gratis, which would nullify any interest of the other owners. While a co-owner may grant a non-exclusive license to others "unilaterally, [this is] because his co-owners may also use the work or grant similar licenses to other users and because the non-exclusive license presumptively does not diminish the value of the copyright to the co-owners." *Davis*, 505 F.3d at 100 (citation omitted). Further, the oral license as alleged by Movants appears to be in perpetuity, which is not only further evidence that it was not a non-exclusive license, but it clearly would violate the statute of frauds.

Movants' argument that KRS-One "publicly abandoned" and therefore placed the Work in the public domain also fails. Just like the license defense, whether the copyright is in the public domain is an affirmative defense, and therefore is not subject to dismissal on 12(b)(1) grounds. *Golden v Michael Grecco Productions, Inc*., 524 F.Supp.3d 52, 65 (E.D.N.Y. 2021)(dismissing the public domain affirmative defense on summary judgment as a valid copyright existed). Even if a public domain argument were grounds for dismissal pursuant to R. 12(b)(1), which it is not, Movants have not established that the Work is in the public domain. Movants cite to no law to support such a theory. KRS-One also could not have placed the Work in the public domain as he did not own it. Moreover, as any attempt by KRS-One to place the Work into the public domain would impair LaRock's rights in the Work and any attempt to do so would fail as a matter of law.[12]

Dismissal under 12(b)(1) is clearly not warranted. As Plaintiff's allegations of copyright ownership have not been placed at issue, Plaintiff may rely on its allegations in the Complaint (*Carter,* 822 F.3d at 56), which for the reasons stated above sufficiently plead standing to sue. Additionally, Plaintiff provides evidence that it owns, or at least co-owns, a copyright registration

---

[12] The Court should not consider any argument raised for the first time on reply as it was Movants' moving burden to establish their 12(b)(1) argument.

in the Work and has 100% administration rights therein with power to sue for copyright infringement. *See* SOF §A; Mende Decl. ¶¶4-10, Ex. 10. This evidence rebuts the numerous theories that Movants have and is sufficient to at least defeat a motion to dismiss. The Court should deny the 12(b)(1) motion as the alleged facts regarding standing are intertwined with the merits of Plaintiff's claim, i.e. whether Plaintiff owns copyrights in the Work as alleged in the Complaint. *See Alliance For Environmental Renewal, Inc.,* 436 F.3d at 88.

## II.     MOVANTS' 12(B)(6) CLAIM FAILS

### A.  MOVANTS' DIRECT INFRINGEMENT WAS SUFFICIENTLY PLED

A plaintiff asserting a claim for copyright infringement must allege "that it owns a valid copyright and that the defendant violated one of the exclusive rights the plaintiff holds in the work, which includes distribution rights." *DigitAlb, Sh.a v. Setplex, LLC*, 284 F.Supp.3d 547, 554 (S.D.N.Y. 2018). In other words, a plaintiff "must generally plead (1) the specific original works [that] are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights were registered in accordance with 17 U.S.C. § 411; and (4) the acts by which… the defendants infringed the copyright." *Id.*, *citing Kelly,* 145 F.R.D. at 36. To withstand a motion to dismiss, the plaintiff must "plead [ ] factual content" for each element of the claim asserted such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeda Research & Dev. Co. Ltd*, 2019 WL 4562409, at *3 (*citing Ashcroft*, 556 U.S. at 678 (citation omitted)). A plaintiff in a copyright infringement action is not required "to plead 'specific evidence or extra facts beyond what is needed to make the claim plausible.'" *Yeda Research & Dev. Co. Ltd.*, 2019 WL 4562409, at *3 (*quoting Ellis v. Jean*, 2011 WL 6368555, at *4 (S.D.N.Y. 2011). Plaintiff pled these elements.[13]

Plaintiff pled a viable claim of copyright infringement against Movants as it sufficiently

---

[13] If any element is not sufficiently pled, Plaintiff should be given leave to amend.

alleged (a) its ownership of copyright registrations in an original[14] work, i.e. Work, that it acquired through an assignment, (b) that elements of the Work were utilized by Movants through sampling into the Infringing Work, (c) that the Infringing Track was embodied onto the Stemplayers that were distributed to the public, (d) that elements of the Work were included in stems on the Stemplayers for the purpose of permitting users of the Stemplayers to make additional derivative infringing works; (e) that Movants "reproduced, distributed, displayed and performed" elements of the Work by using the Infringing Track in advertisements for the album *Donda* and the Stemplayer;[15] (f) specific dates and time frames of Movants' infringements. *See* SOF §§A-B; Compl. ¶¶18, 20, 25, 29, 31-34, 38-51, 56, 58, 63-68. These facts alone were more than sufficient to plead a viable copyright infringement claim pursuant to Rule 8 as the allegations place Movants on notice of the facts establishing each element of the claim. *See e.g. Scott*, 2012 WL 1592229, at *2 (holding that plaintiff plausibly pled copyright infringement as he alleged that he became the owner of the registered video and defendant "maintained a copy of the video on its website without his authorization after that time."). As such Count I should not be dismissed.

Movants' argument concerning other infringing uses is completely irrelevant. The Complaint's allegations make it crystal clear that Movants reproduced samples of the Work in the Infringing Track, the Infringing Track was included on Stemplayers that were sold with Movants' authorization, that individual stems on the Stemplayer contained copied elements from "South Bronx", that third-parties could use the Stemplayer to make derivative works, and that the Infringing Track was used by Movants to advertise both the Stemplayer and the album *Donda*. SOF §§A-B. The infringement was more than sufficiently pled. That as part of Movants'

---

[14] The Registration certificate for the Work constitutes prima facie evidence of originality as it was filed for and obtained within 5 years of first publication.  Van Cleef & Arpels Logistics, S.A. v Jewelry, 547 F.Supp.2d 356, 361 (S.D.N.Y. 2008), *adhered to on reconsideration sub nom. Van Cleef & Arpels Logistics, S.A. v Landau Jewelry*, 583 F.Supp.2d 461 (S.D.N.Y 2008); *see also* fn 5, *supra*.

[15] *See also* https://en.wikipedia.org/wiki/Stem_Player, which the Court may take judicial notice of.

advertising campaign to promote the Stemplayer Drake broadcast the Infringing Track (Compl. ¶48) neither obfuscates nor minimizes Movants' liability. To the contrary it proves it. Moreover, the allegation that Movants provided social media influencers with physical copies of the Stemplayer containing the Infringing Track in order for them to take steps to advertise it, which directly resulted in Drake's broadcast of the Infringing Track and other performances of the Infringing Track (*id.*), also sufficiently pled both a direct and contributory infringement claim. *Laine v Pride*, 2010 WL 199927, *7 (S.D.N.Y. 2010)("The "to authorize" language [in 17 U.S.C. § 106] was added by Congress solely for the purpose of making it expressly clear that a copyright holder can assert contributory infringement as well as direct infringement"). The plausible inference is that Movants authorized this broadcast to promote the Stemplayer.  There is no case that stands for the proposition that a plaintiff cannot plead both direct infringement and contributory infringement in the same complaint. *See id.*

Movants' argument based on lack of notice as to which version of the Infringing Track was allegedly released by Drake, by the Stem Parties, or third-party advertisers is specious. The Complaint clearly alleges that the "Infringing Track" was included on the Stemplayer and was in advertisements for the Stemplayer and the *Donda* album. SOF §B; Compl ¶¶26, 30-34, 48-51, 55-57. It does not matter which version of the Infringing Track it was—Plaintiff pled that the Infringing Track i.e. "Life of the Party" with the sampled elements of South Bronx in it, was an unauthorized derivative created by Movants that was reproduced, distributed and publicly performed, including in the Stemplayers that were sold. SOF §B. Those are all acts of infringement—if there was more than one infringing version of the Infringing Track that is a matter for discovery. The Court should also disregard Movants' argument that one version of "Life of the Party" did not contain any elements of South Bronx. A motion to dismiss is not the place to resolve disputes, and to the extent there is a non-infringing version, it is not the Infringing Track

14

complained of in the Complaint. Matz Decl., ¶23; SOF §B; Section III, *infra*. Also, the claim of a non-infringing version cannot be considered as it is based on facts outside the Complaint.

Movants' argument feigning confusion about what elements of the Work were copied and used is also insufficient and should be rejected. The elements that were sampled are sufficiently alleged and indeed can be heard throughout the Infringing Track by simply listening. Compl. ¶¶25, 43; SOF §B.[16] These allegations and recordings of the Infringing Track establish the "copying of constituent elements of the work', a required element of copyright infringement. *May,* 399 F.Supp.3d at 179. It was also alleged that South Bronx was a "seminal track in the American hip hop lexicography" and that Movants contacted Plaintiff in order to obtain a sample license on July 14, 2021 and again on November 10, 2021. Compl. ¶¶35, 45, 52; Mende Decl. Exs. 11-13[17]. Further, GOOD II's representative informed Plaintiff that "Life of the Party" sampled a "drum/horn hit" from original "master recording [] of 'South Bronx'" in their request for a license. Mende Decl. Ex. 11. Indeed in their fair use argument in this motion, Movants confirm they sampled portions of South Bronx–they clearly know what elements they used. As such, Movants are on notice of the elements of South Bronx that they used and they cannot legitimately claim otherwise. Movants are advocating that the Court adopt a stringent pleading requirement that would require a plaintiff to literally break down each infringement by specific time location in the song where the infringement occurred and to literally include a sound recording containing the infringement with its pleading. That is not the law, and the argument should be rejected.[18]

Movants' contrived sample argument should also be rejected. Plaintiff has not 'admitted'

---

[16] "'In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *May v Sony Music Entertainment*, 399 F Supp 3d 169, 179 (S.D.N.Y. 2019)(quotations and citation omitted). Thus, the Court can listen to the Work and the examples of infringement provided herewith to decide for itself the elements Movants used. 17 The Court may consider these exhibits because they were specifically referenced in the Complaint.

[18] If the Court determines that Plaintiff should plead further specifics such as the times when the infringement occurred, or any other parts that it believes could be more specifically pled, Plaintiff should be given leave to amend.  In fact, Plaintiff alleges many examples of the time frames where the samples are located at SOF §B.

that the Work is made up of 'many samples', nor would a sample within the work render it uncopyrightable. *See New Old Music Grp., Inc. v. Gottwald*, 122 F.Supp.3d 78, 94 (S.D.N.Y. 2015)("'[U]noriginal elements, combined in an original way, can constitute protectible elements of a copyrighted work.'"). It is telling that Movants do not cite to any case to support its argument that failure to allege all samples used in a track requires a copyright claim's dismissal under Rule 8.[19] For example, *McDonald v West*, 138 F.Supp.3d 448, 460 (S.D.N.Y. 2015), *aff'd,* 669 Fed App'x 59 (2d Cir. 2016) notice of samples was not an issue.[20] Accordingly, this argument too should be rejected, especially on a motion to dismiss. *May*, 399 F.Supp.3d at 186 fn. 44.[21]

## B.  ALL CLAIMS AGAINST GOOD II AND GOOD MUSIC WERE SUFFICIENTLY PLED

The Complaint alleged viable claims against GOOD II and GOOD Music for copyright infringement, contributory infringement and vicarious infringement. It is simply not true that the Complaint "did not put forth 'a single factual allegation'" against GOOD II and GOOD Music. *See e.g.* Section II(A), *supra*, Section II(C), *infra;* Compl. ¶¶16-18, 24-25 (concerning GOOD II) and *id.* ¶¶19-20, 23-25 (concerning GOOD Music). These allegations alone allege their role in the infringing acts (i.e. as the parties who supervised and authorized the copying of the Infringing Track on the Stemplayer, exploited the Infringing Track by authorizing its use advertisements and as being responsible for clearing rights for the Infringing Track) and how the infringement

---

[19] Movants' footnote 10 does not accurately reflect what occurred at the May 17, 2023 conference.  The Court did not agree with Movants that the infringement was not readily apparent.  To accommodate Movants' counsel who was feigning confusion, the Court asked if Plaintiff's counsel would play back the infringements as a courtesy to Movants' counsel, which was agreed to as a courtesy, and subsequently included in the Court's directive.

[20] Movants' other cited references also do not support their argument**.**  In *Gayle v. Allee*, 2021 WL 120063, at *2,(S.D.N.Y.2021), the Court dismissed the claim for failure to "plead what images were covered by the copyright". In *Paul Rudolph Found. v Paul Rudolph Heritage Found.*, 2022 WL 4109723, at *7 (S.D.N.Y. 2022) plaintiff insufficiently pled what works were infringed.  *VMG Salsoul, LLC v. Ciccone*, 2013 WL 8600435 (C.D.Cal.2013), is also of no assistance to Movants as it was decided on summary judgment, not a motion to dismiss.  Also, the horn hit was only used once and lasted .23 seconds.  *VMG Salsoul, LLC v Ciccone*, 824 F3d 871, 879 (9th Cir. 2016). The use of the Work's elements in the Infringing Track is pervasive.  SOF §B.  Courts in this district have expressly declined to follow the *VMG Salsoul* case at the motion to dismiss stage. *See May*, 399 F.Supp.3d at 186.

[21] Movants do not argue whether the extent of the samples taken from "South Bronx" and used were sufficient to constitute copyright infringement.  Any attempt to do so for the first time on reply should be rejected.

occurred. Movants' cases are not applicable as the pleadings in those cases did not directly name the defendants or failed to allege *any* of the particular actions they took, which is clearly not the case here. The "Complaint is not so consuming at to prevent [Movants] from understanding the claims against them or to preclude them from intelligently asserting a [] defense." *Alger v County of Albany, New York*, 489 F Supp 2d 155, 164-65 (N.D.N.Y. 2006). Further, "[t]hrough the discovery process, [Movants] can require Plaintiff to specify what claims [it] is asserting as against each [of the Movants]" if that is not readily apparent. As such, GOOD II and GOOD Music should not be dismissed as parties. If they are, Plaintiff should have leave to replead against them as it has more facts concerning each of their infringing acts than when the Complaint was filed.

### C.     THE CONTRIBUTORY AND VICARIOUS INFRINGEMENT CLAIMS AGAINST MOVANTS WERE SUFFICIENTLY PLED

"A defendant may be held liable for contributory copyright infringement if, 'with *knowledge* of the infringing activity,' it 'materially contributes to the infringing conduct of another.'" *Aaberg v Francesca's Collections, Inc*, 2018 WL 1583037, at *5 (S.D.N.Y. 2018)(*citing Arista Records LLC v. Lime Grp. LLC*, 784 F.Supp.2d 398, 432 (S.D.N.Y. 2011)(quoting *Matthew Bender & Co., Inc. v. W. Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998))(emphasis in original; internal quotations omitted). "'The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know *or have reason to know*' of the direct infringement.'" *Aaberg*, 2018 WL 1583037, at *5 (emphasis in original; citation omitted)(denying defendant's motion to dismiss as plaintiff pled the claim's elements).

The few examples of contributory infringement given by Movants, though sufficient, are not the only examples of contributory infringement alleged in the Complaint. The Complaint alleged that: (a) West owns or operates the Stemplayer website that sold and promoted the Stemplayer containing the Infringing Track (Compl. ¶9); (b) West manages sales of the aforementioned Stemplayer (*id.*); (c) West developed the Stemplayer, which is referred to herein

as a copyright infringement machine (*id.* ¶10); (d) GOOD II, which maintains authorship and ownership of West's copyrights and other properties relating to West's musical concerns, exploited and authorized use of the Infringing Track (*id.* ¶¶17-18); (e) GOOD Music, which is a music label founded by West, supervised the "illegal production of the Infringing Track [] and authorized the illegal reproduction and distribution of [the Infringing Track] on the Stemplayer." (*id.* ¶¶19-20); (f) GOOD II and Good Music authorized each of the infringing actions described in the Complaint (*see e.g. id.* ¶¶24-26, 31-34) and (g) each of the Movants participated in the creation of the Infringing Track even though they knew they had no license from the copyright holder to do so (*id.* ¶¶25, 44-46, 52-55), were sufficient to plead contributory copyright infringement against each of them. *Blank Productions, Inc. v Warner/Chappell Music, Inc.*, 2013 WL 32806, *3 (S.D.N.Y. 2013)(allegations that through its website provided karaoke recordings to third parties that contained plaintiff's copyright protected songs and therefore provided third parties "with materials to commit direct infringement and must have known that such infringement is occurring"); *see also Aaberg v Francesca's Collections, Inc*, 2018 WL 1583037, at *5.

Movants' argument that the claim should be dismissed, because the identities of third parties who advertised the Work are not alleged, fails for several reasons. A plaintiff need only plead that a contributory infringer was aware that infringement was occurring. There is no requirement that a plaintiff or the contributory infringer know who the infringer is. For example, it is impossible for Plaintiff to identify the thousands of Stemplayer owners who have copied and modified elements of South Bronx. *See e.g.* Compl. ¶51. Movants cite to no case that identities of all infringers must be identified, such as advertisers and social media influencers that were hired or authorized by Movants. Movants have this information and Plaintiff will obtain their identities in discovery. Finally, courts in this Circuit will not find an allegation to be insufficient under *Twombly* simply because it is alleged "upon information and belief." *United States v Daugerdas*,

2020 WL 364601, *3 (S.D.N.Y. 2020)("When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying…"). Movants also ignore Count II's allegations of contributory infringement based on the Infringing Track being given to the Stem Parties who committed infringing acts, such as reproducing the Infringing Track on the Stemplayer and then distributing the Stem Player to third-parties, thus enabling the third-parties to commit additional infringements. (*see* SOF §B; Compl. ¶¶31-32, 50-51, 55, 57, 61, 78-86). Plaintiff's identification of the Stem Parties renders the argument moot. Count II should not be dismissed.[22]

Movants' 'knowledge' of the infringement falls flat as Plaintiff alleged that Movants contacted Plaintiff to inform them that they had sampled from South Bronx and requested a license. SOF §B; Mende Decl. Exs. 11-13. Clearly that constitutes knowledge. Movants' argument would fail on summary judgment, let alone on a less stringent motion to dismiss standard.

Finally, for the reasons set forth in Section III, Movants' fair use argument fails.

"Vicarious copyright infringement exists where a defendant profits from direct infringement 'while declining to exercise the right to stop or limit it.'" *Blank Productions, Inc.*, 2013 WL 32806, *3 (*citing Metro-Goldwyn-Mayer Studios Inc. v Grokster, Ltd.,* 545 U.S.913, 913 (2005); *see also Gershwin Pub. Corp. v Columbia Artists Mgt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne may be vicariously liable if he had the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."). "Unlike contributory infringement, knowledge is not required to show vicarious infringement; the only requirements are direct financial benefit and the ability to control third parties' infringing conduct." *Blank*

---

[22] Further, Movants' cited references are not applicable. For example, *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. 2012) and *Paul Rudolph Foundation*, 2022 WL 4109723, at *7 do not involve contributory infringement.  Also, the *Cole* court found that the plaintiff failed to identify the infringed upon work and the *Paul Rudolph Foundation* court held that plaintiff failed to plead the infringing work.  *See id*.  This is not the case here—the infringing work and the infringed upon work were pled.

*Productions, Inc.*, 2013 WL 32806, *3 (citing *Arista Records LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 156 (S.D.N.Y.2009). The Complaint's allegations that each of the Movants had a right and ability to supervise the infringing conduct that occurred, indeed they provided, and authorized the continued use of, the Infringing Track in the Stemplayers that were sold, and had a direct financial interest in the infringing conduct (Compl. ¶¶20 [Good Music supervised and authorized the illegal reproduction and distribution of the Stemplayer containing the Infringing Track], 24 [same regarding GOOD Music and GOOD II], 27-30, 45, 48-51), were clearly sufficient to plead the vicarious liability claim. *Blank Productions, Inc.*, 2013 WL 32806, *3 (the claim was sufficiently pled as plaintiff alleged that defendant financially benefitted from the infringing conduct and alleged that defendant had a legal ability to stop or limit the infringing conduct as well as the "practical ability to do so."). The Drake leak is just one example of many that gives rise to a viable claim and Movants tellingly ignore the others, such as that third parties using the Stemplayer were enabled, if not encouraged, to commit copyright infringement by creating derivative works. Compl. ¶51. Further, as it was alleged that Movants authorized influencers to use the Infringing Track to advertise the Stemplayer, and that Drake broadcast it as part of that campaign (*id,* ¶48), it can be plausibly inferred that Movants could have stopped the leak.

### D.   WILLFUL INFRINGEMENT CLAIM WAS SUFFICIENTLY PLED

Movants' argument that there was no "willfulness" of copyright infringement pled should not be considered. An infringement is willful if "'the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility.'" *Hounddog Productions, L.L.C. v Empire Film Group, Inc.*, 826 F.Supp.2d 619, 631 (S.D.N.Y. 2011)(finding that plaintiff established willfulness as the plaintiff terminated defendants' distribution rights and defendant nonetheless continued to promote and distribute the film)(*citing Hamil Am., Inc. v. GFI,* 193 F.3d 92, 97 (2d Cir.1999)). Plaintiff alleged, and the documents that a court may consider,

show that Movants were aware that Plaintiff owned the Work and that a license from Plaintiff was necessary as it owned copyrights therein. *See* SOF §B; Mende Decl. Exs. 11-12; Section II(A), *supra* and Section (III), *infra.* Movants cannot argue otherwise. Additionally, Movants cannot argue that they did know that a license from Plaintiff was necessary. Indeed, Movants' letter withdrawing their license request blatantly misrepresents that a license was not needed as the sampled material from the Work "was removed from the recording entitled 'Life of the Party'. Mende Decl. Ex. 13. This was clearly not true as the version with the sampled material i.e. the Infringing Track was on Stemplayers that were sold to the public. *See* SOF §B; Mende Decl. Ex. 13. As such, and as we are at the pleading stage, the allegations of willfulness cannot be dismissed.

### III.   MOVANTS' FAIR USE ARGUMENTS SHOULD BE REJECTED

Movants' reliance on the *Chapman* case is misplaced as the facts there are entirely different. Plaintiff does not allege that Movants were simply experimenting with the use of Plaintiff's work in the Infringing Track that Movants never released as was the case in *Chapman*— to the contrary, Plaintiff alleges Movants used samples of South Bronx in the Infringing Track, asked Plaintiff for a license, and then willfully authorized the distribution of the Infringing Track before negotiations for the license were finalized in violation of Plaintiff's exclusive rights. Compl., ¶¶45; 52-55. Even if *arguendo* Plaintiff had alleged that Movants were "experimenting" with South Bronx in the Infringing Track and did not release it on the Stemplayer, Plaintiff pled that Movants intentionally leaked the Infringing Track and used it in advertisements to promote the Stemplayer. *Id.* ¶¶48-49. *Chapman* clearly has no bearing on what Plaintiff has alleged here.

Further, *Chapman* was not decided at the motion to dismiss stage—it was decided on a summary judgment, where discovery had taken place and there was a record of undisputed facts that the Court relied on in making its ruling. *Chapman v. Maraj*, 2020 WL 6260021, at *6 (C.D. Cal. 2020). Whereas here, all of the material facts are in dispute, as is evident by Movants' factual

allegations that are improperly set forth in their moving papers, i.e., that Movants were "experimenting" with South Bronx and never released the Infringing Track (Mem. p.9), which are merely disagreements with the facts alleged in the Complaint and are subject to discovery. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); Section II, *supra*.

It is for that exact reason that a fair use determination is rarely appropriate on a motion to dismiss. As this Court has previously observed, "there is a dearth of cases granting such a motion." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015)(citing *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 WL 2696168, at *10 (S.D.N.Y. 2008)(where a similarly situated defendant could not identify "any cases in this Circuit that have granted a motion to dismiss on the grounds of fair use."). Indeed, well settled law provides that Courts will only consider fair use on a motion to dismiss where "discovery would not provide any additional relevant information' and '[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue." *May,* 399 F.Supp.3d at 188 (internal quotations omitted).That is not the case here. Discovery is necessary as Movants have the burden of proven their fair use defense, and Plaintiff disputes everything that Movants allege, including the misrepresentation that they did not release the Infringing Track[23]-- that is not what is pled. Compl. ¶50.

Giving deference to Plaintiff's allegations, as required on a motion to dismiss, it cannot be disputed that Movants have failed to meet their burden of showing that fair use is "so clearly" established on the face of the Complaint and its incorporated exhibits. *See TCA Tel. Corp. v McCollum*, 839 F3d 168, 178 (2d Cir 2016). Movants have not even attempted to make such a showing. Instead, they claim that Plaintiff bears the burden of pleading facts to support their defense. Mem. p.11. That is a clear misapprehension of the law. *See Campbell v Acuff-Rose Music,*

---

[23] Ironically, while Movants argue that they did not use South Bronx (even though they admitted that they did), they also plead that they did use South Bronx, but it was fair use. (Mem. p.11).

*Inc.*, 510 U.S. 569, 590 (1994).

Also the factors do not support fair use. On the first factor, "the purpose and character of the use," 17 U.S.C. § 107(1), the Court considers the transformative nature of the work, and 'whether copyrighted materials are used for a commercial purpose or for a nonprofit educational purpose'. *TCA Tel. Corp.*, 839 F3d 168 at 179-183. Here, Plaintiff adequately alleges that the Infringing Track does not alter the message of the Work as required to be considered "transformative use" because South Bronx was a diss track that was beginning of hip hop's "Bridge Wars", and similarly, the Infringing Track is also known as a diss track. Compl., ¶¶35-36; Matz Decl., Ex. 14. Plaintiff has also clearly alleged that Movants' use of South Bronx was commercial in nature where the Infringing Track and advertisements were part of a commercial venture to sell Stemplayers and were added as a bonus "unreleased" track that drove sales. Compl. ¶¶44-55; Matz. Exs. 6,14.[24] The licensing request sent by GOOD II also makes clear that Movants intended to use South Bronx "in connection with all advertising, publicity, and promotion of 'LOTP'". Mende Decl. Ex. 11. Therefore the question, if any of Movants' alleged 'experimental' motives is a factual one, "making it inappropriate for dismissal at this stage". *BWP Media USA, Inc.,* 87 F.Supp.3d at 506. As to the second factor, that Movants believe the work is a "public work" is of no consequence to the "nature of the use" 17 U.S.C. § 107(2), where Plaintiff has alleged that it is the owner of the copyrights to the Work (SOF §A), and clearly Movants' use was not transformative.

As to the third and fourth factors, the questions of whether the "quantity and value of the materials used, are reasonable in relation to the purpose of the copying" (*Campbell*, 510 U.S. at 586), and "the effect of the use upon the potential market for or value of the copyrighted work" 17 U.S.C. § 107(4) are not appropriate at this stage of the case where the answers are not clear from the pleadings. *See Campbell*, 510 U.S. at 590. Indeed, Movants again rely on *Chapman* in support

---

[24] These exhibits may be considered as they were integral to the Complaint and the Court can take judicial notice.

of these factors, and ignore that *Chapman* was not decided on a motion to dismiss before discovery. *Chapman*, 2020 WL 6260021 at *6. Here, the Court "must credit Plaintiff's allegations at this stage" (*BWP Media USA, Inc.,* 87 F.Supp.3d at 510), and as Plaintiff has alleged that Movants directly sampled multiple portions of its copyright protected Work and sought a license to do so (SOF §B), Movants' knowingly unlawful distribution of the Infringing Track in the same market without a license could be found to have encroached on Plaintiff's protected market to license its Work. *See Andy Warhol Found. for the Visual Arts, Inc. v Goldsmith*, 143 S Ct 1258, 1272 (2023). Moreover, Movants have not established why their use was justified in any capacity to support this defense. *TCA Tel. Corp.*, 839 F3d 168 at 183. As such, Movants' fair use defense fails.

## IV.    MOVANTS FAIL TO ESTABLISH THEIR 12(B)(7) ARGUMENT

The fact that additional tortfeasors were not sued for copyright infringement does not support Movants' 12(b)(7) motion. Copyright infringement cases are analogous to tort cases and the "copyright holder may sue any participant in the chain of distribution 'as it sees fit.'" *Unicolors, Inc. v Macy's, Inc*., 2015 WL 1020101, at *4 (CD.Cal 2015)(*citing Costello Pub. Co. v Rotelle*, 670 F2d 1035, 1043 (D.C. Cir. 1981); *Scroggins v Scroggins*, 2012 WL 3229282, at *2 (E.D.N.Y. 2012)(motion denied for failing to name parties in a copyright infringement case under Rule 19 as "the Court can 'accord complete relief among [the] existing parties'" (citation omitted). "The law permits joint and several liability and allows plaintiffs to recover from some, but not all tortfeasors." *WM Intl., Inc. v 99 Ranch Mkt. #601*, 329 F.R.D. 491, 498 (E.D.N.Y. 2019); *Robbins Music Corp. v. Alamo Music, Inc.*, 119 F.Supp. 29, 31 (S.D.N.Y. 1954)("an aggrieved party is not compelled to sue all tort-feasors."). Not including a joint or contributory infringer does not warrant dismissal under Rule 12(b)(7). In a 12(b)(7) analysis, a party is only necessary if "in the person's absence complete relief cannot be accorded *among those already parties*" or "disposing of the action in the person's interest may impair or impede the person's ability to protect the interest" or

"leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.  Fed. R. Civ. P. 19(a)(1)(A-B); *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 58 F.R.D. 185, 190 (S.D.N.Y. 1972). Movants did not satisfy their burden as they only argue in the most conclusory terms that Sirus XM and unspecified third parties were also responsible for "its alleged actions in regards to the 'Drake leak' and the 'third-party advertisers'". Mem. at 22. This alone does not satisfy their moving burden. *Plymouth Resources, LLC. v Norse Energy Corp. USA*, 2011 WL 13234819, at *11 (N.D.N.Y. 2011)(rejecting defendants' argument as conclusory as it neither identified any required party that was omitted, did not specify how those unidentified parties would suffer nor explained "what rights would be compromised."). Further, Movants' mere recitation of the 12(b)(7) test utilized in *Viacom Intern., Inc. v Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000) does them no favor. The court in *Viacom* noted that if a party is not necessary, "then the court need not decide whether its absence warrants dismissal." *See id*. at 724. Additionally, Movants provide no argument regarding the Rule 19(b) analysis, which is whether it is not feasible to join a necessary party. *See id*. at 725. Moreover, Movants could bring claims against any unnamed party if they actually believed they were indispensable. For these reasons, Movants' 12(b)(7) motion should be denied.

## CONCLUSION[25]

For these reasons, the motion should be denied, and in the event the Court believes that any facts are insufficiently pled, Plaintiff should have leave to replead, along with any other such further relief as it deems just and proper.

---

[25] The Court should not consider Movants' public policy argument buried in Movants' conclusion.  There is no case that would allow the Court to disregard copyright law.  Further, as stated above, the fair use defense does not apply.

Dated: New York, New York
      September 22, 2023

ADELMAN MATZ P.C.

By:_____
    Sarah M. Matz, Esq.
    Gary Adelman, Esq.
    David Marcus, Esq.
1159 Second Avenue, Ste 153
New York, New York 10065
Tel: (646) 650-2207
Email: sarah@adelmanmatz.com
Email: g@adelmanmatz.com
Email: david@adelmanmatz.com
*Attorneys for Plaintiff*